IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 25-92 |
| | : | |
| ROBERT REDDING | : | |

### ROBERT REDDING'S SENTENCING MEMORANDUM

Robert Redding, by and through his undersigned counsel, Angela Levy, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby submits this sentencing memorandum in anticipation of his Sentencing Hearing, scheduled for February 19, 2026. For all the reasons set forth more fully below, Mr. Redding respectfully requests the Court grant a downward variance from the advisory guidelines calculation and impose a sentence that will reflect the seriousness of his offense, allow for necessary and meaningful treatment, and permit reintroduction into society on supervision. The advisory guidelines range of imprisonment overstates the appropriate punishment in this case, and a sentence that reflects a downward variance is the minimally sufficient sentence that will accomplish the goals of sentencing as set forth at 18 U.S.S.C. § 3553(a).

I.  INTRODUCTION AND BACKGROUND

Mr. Redding, having been charged by Indictment with child pornography offenses, accepted responsibility early and pled guilty to all charged offenses. On August 4, 2025, Mr. Redding pled guilty to one count of distribution and attempted distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and one count of possession of child pornography

in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). As discussed in greater detail below, Mr. Redding has outstanding legal objections to the sentencing guidelines calculation as set forth in the final Presentence Report ("PSR"); however, given current case law precedent in this Circuit, he expects the Court will likely agree that the guidelines range has been correctly calculated. A guidelines range of 360 months to 1,200 months (PSR ¶ 101) not only overstates the appropriate punishment in this case, but it would operate as an unwarranted sentencing disparity for other defendants charged with the same or similar offenses. Moreover, Mr. Redding is desperate for meaningful treatment, and he will present evidence at his sentencing hearing that he is amenable to meaningful and appropriate treatment. In short, his risk of recidivism can be reduced or eliminated through proper treatment. As such, he respectfully submits that a sentence that reflects a downward variance is more appropriate than a guidelines sentence in this case.

## II.     PERSONAL HISTORY AND CHARACTERISTICS

Robert Redding is 43 years old. He is painfully shy and tends toward social awkwardness. His childhood was marked by neglect, abuse, dysfunction, and a lack of critical oversight during formative adolescent and teenage years. He has been recently diagnosed with Persistent Depressive Disorder, Pedophilic Disorder, Internet addiction, and he needs specialized sexual offender treatment. He has spent most of his life – especially his recent adult life – experiencing debilitating feelings of shame and humiliation. He is desperate for treatment, including forms of treatment that have been, at times, characterized as extreme. He wants, and has asked for in the past, chemical castration. He will ask the Court to recommend that he serve his sentence at a Bureau of Prisons ("BOP") facility that has a specialized residential sex offender treatment program; specifically, he will ask the Court to recommend that he serve his sentence at FMC Devens in Massachusetts.

Annie G. Steinberg, M.D., conducted a psychological evaluation of Mr. Redding. She met with Mr. Redding and interviewed him extensively, reviewed numerous records, formed opinions and conclusions about his diagnoses and treatment amenability, and made recommendations for appropriate treatment and intervention. A copy of Dr. Steinberg's Psychological Report is attached hereto as Exhibit A. Mr. Redding requests that Exhibit A be sealed as the report contains information that is confidential, private, and is inappropriate for the public docket.[1]

At pages two through 10, Dr. Steinberg's report details the history of Mr. Redding's current case, his prior criminal case, and records from Mr. Redding's time in state custody. At pages 11 through 22, Dr. Steinberg provides a detailed summary of Mr. Redding's interview, personal and family history, a summary of notable events from his childhood, and summaries of interviews with other individuals who know Mr. Redding. Finally, at pages 22 through 30, Dr. Steinberg provides her opinions as to Mr. Redding's diagnoses and recommendations for a specialized treatment regimen.

In writing about Mr. Redding's diagnosis of Persistent Depressive Disorder, Dr. Steinberg notes that his depression is "characterized by abysmal self-esteem and abject hopelessness about his self-value, particularly in interpersonal situations. Throughout his life, his mental state has been punctuated by periods of disappointment, losses and betrayals accompanied by severe depression with intense feelings of worthlessness and impaired functioning . . ." Exhibit A at p. 22. Dr. Steinberg further writes about how crucial developmental experiences "shaped Mr. Redding's damaged sense of self and relational capacity." *See id.* at p. 23. There exists "strong evidence that Mr. Redding experienced

---

[1] A Sealing Order is separately submitted to the Court regarding filed Exhibit A under seal.

3

significant trauma in childhood including at the least, severe neglect and physical abuse that went undetected and untreated." *Id.*

Considering that "Mr. Redding was not given any reason to believe he was lovable," and that "he continued to experience disrupted attachments with maternal rejection and paternal alienation," he became "particularly susceptible to the escape he could achieve on the Internet" as he was entering puberty and throughout adolescence. *See id.* at p. 24. Dr. Steinberg concludes that "complex childhood trauma resulted in abysmal self-esteem and increased Mr. Redding's vulnerability to compulsive Internet use and sexual behaviors." *Id.*

Dr. Steinberg further writes that while treatment of Pedophilia and Internet addiction is tough, Mr. Redding is desperate for treatment and there do exist meaningful treatments. *See id.* at p. 25. He "expressed deep shame and mortification due to his past behaviors and recidivism. He was aware of the criminality of the behavior but described little to no self-control once he faced the loss of his grandmother and multiple adverse life experiences. He is desperate for treatment that can help him contain the behaviors he detests but cannot control and does not understand." *Id.*

Perhaps most significantly, Dr. Steinberg concluded that Mr. Redding's "prognosis for successful treatment and managed risk in the community has several positive indicators" while acknowledging that such prognosis is dependent on access to relevant and necessary mental health care. *See id.* at p. 28. Dr. Steinberg writes that "Mr. Redding has been extremely open with what he can remember of his life history; his candor and willingness to share suggests that underlying his suicidality is the awareness of the necessity and desperate wish for treatment. He remains vulnerable in the general population [of a custodial setting] and is receptive to treatment in a specialized unit such as Devens, which has a sexual offender program at present. Mr.

Redding has never had a full course of treatment and was released on parole during the pandemic, when treatment options were still virtual and his access to real-time therapy was minimal. Finally, he has always accepted medication for his depression and after his release in 2023, he benefited greatly from his outpatient treatment program and connected well with his therapist." *Id.* at p. 28.

Moreover, "Mr. Redding has demonstrated some positive prognostic factors: his capacity for adult sexual interest, his non-exclusive pedophilic interests, and his history of at least one adult romantic relationship are protective factors that suggest he is searching for a relationship rather than an obligatory offender, and he is amenable to directed treatment." *Id.* at p. 29. Finally, Dr. Steinberg concludes that "Mr. Redding's risk of sexual recidivism can be meaningfully reduced and even eliminated. Given that he has not had an extensive history of psychiatric treatment and has not demonstrated evidence of treatment resistant symptoms, there are many options for treatment and multi-modal treatment offers an array of options and hope." *Id.*

As noted in the PSR at paragraph six, Mr. Redding has not incurred any misconducts or infractions while he has been detained at the Federal Detention Center ("FDC"). Additionally, at paragraph 119 of the PSR, under Part F (Factors that May Warrant a Sentence Outside of the Advisory Guideline System), the Probation Officer wrote that, "[h]ere, [Mr. Redding] has expressed his desire to seek sex offender treatment while in custody and on supervised release. He is also addressing his mental health issues through medication while in custody. These factors may be considered pursuant to 18 U.S.C. § 3553(a)."

Mr. Redding has attempted to make as much positive use of his time at the FDC as he could. He signed up for, participated in, and successfully completed several courses. He will ask the Court to order a modified PSR that reflects all of the courses he completed at the FDC.

5

Paragraph 88 of the PSR lists three courses that Mr. Redding completed; however, as of the current date, he has received certificates of completion for a total of nine courses. Copies of Mr. Redding's certifications of completion are attached hereto as Exhibit B.

|    | Course Title                  | Certificate Date  |
|----|-------------------------------|-------------------|
| 1. | Improving My Mental Health    | June 3, 2025      |
| 2. | Taking Charge of My Finances  | June 12, 2025     |
| 3. | How to Play Dominoes          | July 2025         |
| 4. | ACE Class: Civics             | July 10, 2025     |
| 5. | ACE Class: Civics             | July 10, 2025     |
| 6. | How to Play Spades            | August 2025       |
| 7. | Responsible Thinking          | August 11, 2025   |
| 8. | How to Play Pinochle          | October 2025      |
| 9. | My Individual Change Plan     | October 2, 2025   |

As Dr. Steinberg recounts in her report, Mr. Redding has been the target of harassment, extortion, physical assault, and baseless accusations at the FDC. *See* Exhibit A at p. 13. Mr. Redding enjoyed working in the kitchen; however, his responsibilities on kitchen duty were short-lived when another inmate accused him of making racist comments. Mr. Redding denies that he ever made racist comments, and he believes his accuser was motivated to get him fired from his job so that the accuser could work there instead. Mr. Redding was, in fact, relieved of his kitchen duties and his accuser now has his former post. *See id.* Notwithstanding the difficulties of being detained at the FDC and his feelings of hopelessness, Mr. Redding signed up for and successfully completed several courses offered by the institution. He spends his time reading and researching facilities that offer treatment options in which he can participate.

A review of Dr. Steinberg's report summarizing Mr. Redding's psychological evaluation and the PSR demonstrates that Mr. Redding is a person who, given the appropriate structure, supervision, and treatment, is capable of change and deserving of an opportunity for managed reintegration into the community after he serves his custodial sentence. Given his age and the amount of time he is likely to still serve in state custody for his parole violation, a guidelines

sentence – even at the low end of 30 years – may mean that Mr. Redding serves the rest of his life in prison. He respectfully submits to the Court that such an outcome is neither just nor fair, and it is certainly would not reflect a sentence that is "sufficient, but not greater than necessary," to comply with the need for the sentence imposed, as set forth at 18 U.S.C. § 3553(a).

### III. SENTENCING ARGUMENT

Mr. Redding respectfully asserts that a sentence below the advisory sentencing guidelines calculation is warranted and appropriate in his case for two major reasons: 1) the vast majority of offenders who are similarly situated to Mr. Redding are sentenced below the applicable guidelines range, and 2) Mr. Redding's personal history and characteristics are such that he is amenable to meaningful treatment which will reduce – or even eliminate - his risk of reoffending.

A sentence below the guidelines will still be very lengthy; Mr. Redding faces, at a minimum, a statutory mandatory sentence of at least 180 months, or 15 years. A sentence that is at least 15 years, but far less than 30 years, will more than adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford both general and specific deterrence, and provide Mr. Redding with needed training, medical care, and correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(A)-(D).

   A. Mr. Redding's Objections to the Advisory Sentencing Guidelines Calculation.

Mr. Redding agrees that the applicable guideline is set forth at U.S.S.G. § 2G2.2, and that the base offense level is 22 rather than 18. In the final PSR, U.S. Probation calculates the advisory guidelines to include enhancements for the following specific offense characteristics:

- +2 pursuant to U.S.S.G. 2G2.2(b)(2) for images of a prepubescent minor;

- +5 pursuant to U.S.S.G. 2G2.2(b)(3)(B) for trading child pornography for valuable consideration;
- +4 pursuant to U.S.S.G. 2G2.2(b)(4)(A) and (B) for materials involving sadistic or masochistic conduct or the sexual abuse or exploitation of an infant or toddler;
- +5 pursuant to U.S.S.G. 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor;
- +2 pursuant to U.S.S.G. 2G2.2(b)(6) for use of the Internet; and
- +5 pursuant to U.S.S.G. 2G2.2(b)(7)(D) for an offense that involved 600 or more images.

Mr. Redding objects to three of the enhancements applied by Probation.

Objection 1: Mr. Redding objects to application of the five-point enhancement pursuant to U.S.S.G. 2G2.2(b)(3)(B) for trading child pornography for valuable consideration. Because Mr. Redding was charged with – and pled guilty to – both receipt and distribution of child pornography, his offense conduct *is*, essentially, trading child pornography. He contends that trading child pornography is intrinsic to his offense of conviction and section 2G2.2 already accounts for this intrinsic conduct with a higher base offense level (22 instead of 18). It is duplicative and fundamentally unfair to add five additional levels to an offense level that already reflects an increase for receipt and distribution of child pornography. Moreover, Mr. Redding respectfully asserts that the Sentencing Commission's Commentary interpreting "valuable consideration" is not entitled to *Auer* deference pursuant to *Kisor v. Wilke*, 139 S. Ct. 2400 (2019).

Objection 2: Mr. Redding objects to application of the five-point enhancement pursuant to U.S.S.G. 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. In applying this five-level enhancement, Probation relies on conduct that

forms the basis for Mr. Redding's prior conviction. Mr. Redding respectfully contends that the guidelines already take into account his prior conviction in raising his criminal history category from I to II. Moreover, he faces an increased statutory mandatory minimum as a result of his prior conviction. Additionally, he asserts that his prior conviction does not meet the ordinary definition of "pattern" and the interpretation provided in the Commentary not entitled to *Auer* deference pursuant to *Kisor v. Wilke*, 139 S. Ct. 2400 (2019).

Objection 3: Mr. Redding objects to application of the five-point enhancement pursuant to U.S.S.G. 2G2.2(b)(7)(D) for an offense that involved 600 or more images. Mr. Redding acknowledges the Third Circuit's opinion in *United States v. Haggerty*, 107 F.4th 175 (3d Cir. 2024). He raises this legal objection notwithstanding current precedent for preservation purposes. He respectfully maintains that Section 2G2.2 is outdated and in need of major revisions. The currently accepted methodology for calculating the number of images artificially and arbitrarily drives up the offense level.

Mr. Redding asserts that his correctly calculated sentencing guidelines results in an adjusted offense level of 32 (22, +2 pursuant to subsection (b)(2), +4 pursuant to subsection (b)(4), +2 pursuant to subsection (b)(6), +2 pursuant to subsection (b)(7)(A)(at least 10 images but fewer than 150)). He is entitled to a total of three points' reduction for acceptance of responsibility and timely notification of his intent to plead guilty; as such, the total offense level is 29. With a criminal history category II, the resulting advisory range of imprisonment is 97-121; however, because he is subject to a statutory mandatory minimum of 180 months, that becomes his effective guidelines range.

B. <u>A Downward Variance is Necessary to Avoid Unwarranted Sentencing Disparities.</u>

In fashioning the minimally sufficient sentence, the Court is tasked with considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See id.* at (a)(6). In determining the appropriate sentence for Mr. Redding, this factor should be considered in two different ways. First, the United States Sentencing Commission issued a report in June 2021 regarding federal sentencing outcomes for non-production child pornography offenses and found that less than one third of offenders receive a within-guidelines sentence. *See United States Sentencing Commission 2021 Report: Federal Sentencing of Child Pornography: Non-Production Offenses* at p. 23. A copy of the full report is attached hereto as Exhibit C. Second, offenders whose offense conduct is objectively more serious, or more harmful, than Mr. Redding's offense conduct have received sentences of less than 30 years.

Courts have routinely varied below the 2G2.2 guidelines finding that the enhancements fail to apply only to the aggravated case but instead apply to virtually all possession, receipt and distribution cases. Enhancements that were originally intended to increase the base offense level of a distribution, receipt and possession case arising from the presence of aggravating factors in the specific offense conduct have undergone empirical review and it has been found that *in practice* these enhancements apply to almost all distribution, receipt and possession cases.

In its 2021 report the United States Sentencing Commission found that 4 of the enhancements applied here in Mr. Redding's case are applied in almost every distribution, receipt and possession case: 1) the use of computer 2 level enhancement is applied in 95% of all distribution cases; 2) the victim under age twelve 2 level enhancement is applied in 95% of all distribution cases, 3) the 4 level enhancement for sadistic or masochistic conduct is applied in

10

84% of all distribution cases, and 4) the more than 600 images 5 level enhancement is applied in 77% of all distribution cases. *Id.* at pp. 4-5.

These 4 enhancements (calling for a 13-level increase in the base offense level) drastically increase the base offense level for almost all distribution, receipt and possession cases. The Commission concluded, based on a 2012 report, that "the non-production child pornography sentencing scheme should be revised to account for technological changes in offense conduct, emerging social scient research about offender behavior, and variations in offender culpability and sexual dangerousness." *Id.* at p. 2. To date, Congress has not implemented any of the Commission's recommendations. Not surprisingly, sentencing courts have attempted to correct disparities by varying below the 2G2.2 guideline range.[2]

In a recent Third Circuit case, the Court recognized that sentencing courts routinely and properly vary below the 2G2.2 guideline range. In *United States v. Haggerty, 107 F. 4th 175, 188 (3rd Cir. 2024)* a case dealing specifically with an enhancement under 2G2.2 the Court reiterated that although an enhancement may technically apply "if a sentencing judge determines that applying the . . . enhancement would be overly harsh or unreasonable based on the facts of a given case, she has the discretion to vary downward from the Guideline range and impose what she considers to be a reasonable sentence.  Judges retain discretion to consider factors that can ameliorate a sentence that is overly harsh or unreasonable."

The Third Circuit in *Haggerty* also duly noted that variances under 2G2.2  "have become quite common." *Id. at 188.*  The Court, citing to and relying on the 2021 Sentencing Commission

---

[2] In the October 2011 issue of The Champion the late Senator Arlen Specter and former Assistant United States Attorney Linda Dale Hoffa advanced the conclusion that child pornography sentences had become unfairly disproportionate and that despite Congress' best intentions unduly severe punishments had been mandated for child pornography sentences. Senator Spector recognized in 2011 -- what the Sentencing Commission verified in 2021 -- that the child pornography enhancements apply in nearly every case across the board and drive the guidelines to unjustifiably punitive levels.  See Exhibit D, attached hereto.

11

Report, pointed out that "the U.S. Sentencing Commission reported in 2021 that '[i]n fiscal year 2019, less than one third (30.0%) of non-production child pornography offenders received a sentence within the guideline range,' and '[t]he majority (59.0%) of non-production child pornography offenders received a variance below the guideline range." *Id. at 188.* For these reasons alone a downward variance in this case is sufficient but not greater than necessary.[3]

Additionally, Mr. Redding provides the following chart which outlines cases in which a defendant received sentences of less than 30 years. The cases highlighted below involve production of child pornography and/or unlawful sexual contact with a minor, which Mr. Redding contends, is objectively more serious than his conduct in his instant federal case.

|   | Case Name/No. | Outcome |
|---|---|---|
| 1. | *United States v. John Holcomb*, No. 21-cr-75 (W.D. Wash.) | The defendant was sentenced to 20 years in prison, followed by lifetime supervised release, for filming his sexual abuse of a 6-year-old girl left in his care. *See* DOJ Press Release, available at https://www.justice.gov/usao-wdwa/pr/former-burlington-washington-resident-sentenced-20-years-prison-production-images. The Court referred to the case as one of the most reprehensible it had ever seen, *id.*, and the Guidelines recommended life in prison. *See* ECF No. 95 at 7. Mr. Holcomb created videos that showed him penetrating the girl with his erect penis. ECF No. 1 at 5–6. |
| 2. | *United States v. Selina Wynne Duflo*, No. 21-cr-153 (D. Or.) | The defendant was sentenced to 20 years in prison and 12 years of supervised release, ECF No. 49, per the joint recommendation of the Government and defense, ECF No. 41 at 3, for sexually abusing her own 6-year-old child "over the course of more than a year" and |

---

[3] It has long been recognized that the sentencing guidelines with respect to child pornography offenses are not based upon the usual examination of empirical evidence by the United States Sentencing Commission. *See United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010) (applying abuse of discretion review to a district court's policy-based downward variance from § 2G2.2 because "the Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"); *id.* at 608-09 ("Congress, of course. . . may enact directives to the Commission which the Commission is obliged to implement," but "*Kimbrough* permits district courts to vary even where a guideline provision is a direct reflection of a congressional directive").

|   |   |   |
|---|---|---|
|   |   | sending videos to her romantic partner in California, and for the sexual abuse of a 2-year-old that was also filmed.  ECF No. 42 at 3; *see* DOJ Press Release, available at https://www.justice.gov/usao-or/pr/central-oregon-woman-sentenced-20-years-federal-prison-sexually-abusing-child-sharing.  The Government agreed to recommend 20 years in prison even though Ms. Duflo's advisory Guidelines range was 360 months to life in prison, *see* ECF No. 41 at 3, and even though Ms. Duflo "attempted to render [her 6-year-old child] unconscious using over-the-counter drugs before having [her romantic partner, Daniel Seibert,] engage in sex acts with" the child. |
| 3. | *United States v. Daniel Seibert*, No. 8:20-cr-32 (C.D. Cal.) | The defendant received less than 25 years in prison (292 months), followed by lifetime supervised release, for his part in the abuse of Duflo's child.  *See* DOJ Press Release, available at https://www.justice.gov/usao-cdca/pr/orange-county-man-sentenced-more-24-years-prison-traveling-engage-sex-minors-and.  He was guilty not *only* of sexually abusing Ms. Duflo's drugged 6-year-old child but of (1) sexually abusing a 14-year-old girl multiple times; (2) inducing two other minors to send him explicit material online; and (3) possessing hundreds of images and at least 8 videos of child pornography.  ECF No. 6 at 8–14. |
| 4. | *United States v. Kaleb Scott*, No. 22-cr-5256 (W.D. Wa.) | The defendant was sentenced to 21 years in prison, followed by a lifetime of supervised release, for producing and distributing pornography of him penetrating the buttocks of an infant, who was in his care, with his penis.  *See* DOJ Press Release, available at https://www.justice.gov/usao-wdwa/pr/former-vancouver-washington-man-sentenced-21-years-prison-producing-images-child; *see also* ECF No. 1 at 4.  The Government and defense jointly recommended a sentence of 20 years in prison, notwithstanding that the advisory Guidelines range was *life* and that the defendant had "a prior juvenile record involving sexual misconduct."  ECF No. 38 at 3–4. |
| 5. | *United States v. David Gfeller*, No. 19-cr-6205 (W.D.N.Y.) | The defendant was sentenced to 15 years in prison, followed by 15 years of supervised release, even though his offense level was 44 *after* acceptance of responsibility.  ECF No. 22 at 5–7; *see also* DOJ Press Release, available at https://www.justice.gov/usao-wdny/pr/palmyra-man-going-prison-15-years-producing-child-pornography.  Gfellar produced a |

13

| | | |
|---|---|---|
| | | series of pornographic images of his 4 to 7-year-old child, a series that was distributed far and wide overseas, including in Belgium, Germany, Italy, Portugal, and France. *See* ECF No. 1 at 4–7. Gfeller admitted to manipulating his child's penis on "multiple occasions" "so that the victim would become erect in order for Gfeller to produce the child pornography." *Id.* at 8–9. He further admitted to masturbating to child pornography that he received in exchange for the images of his son. *Id.* at 8. |
| 6. | *United States v. Martin Perea*, 15-cr-3052 (D.N.M.) | The defendant was sentenced to 25 years in prison, followed by 25 years of supervised release. S*ee* DOJ Press Release, available at https://www.justice.gov/usao-nm/pr/los-lunas-man-sentenced-production-child-pornography. Perea took 18 videos of his ex-girlfriend's 7-year-old daughter, including videos of him penetrating her vagina with fingers and various inanimate objects. ECF No. 148 at 5; *see also* ECF No. 1 at 10–11. When Perea's ex-girlfriend found the video evidence and confronted him, he threatened to "burn you and the house down" if she did not return it to him. ECF No. 1 at 11. The ex-girlfriend had to flee from New Mexico to Washington state out of fear for her and her family's safety. *Id.* A search warrant revealed many other video and image files of child pornography. *Id.* at 12–13. |
| 7. | *United States v. Andrew Nicholas,* No. 20-cr-949 (D.N.J.) | The defendant was sentenced to 25 years, notwithstanding that the defendant's advisory Guidelines range was life in prison. *See* ECF No. 25 at 10–11; *see also* DOJ Press Release, available at https://www.justice.gov/usao-nj/pr/gloucester-county-man-sentenced-25-years-prison-production-and-distribution-child. Nicholas photographed his sexual abuse of an infant/toddler in his custody and then distributed the images. ECF No. 25 at 9. |
| 8. | *United States v. Harvey Stewart*, No. 20-cr-15 (M.D. Ga.) | The defendant was sentenced to 23 years in prison, notwithstanding that his Guidelines range was almost certainly much higher. *See* ECF No. 8 at 3; ECF No. 45. Stewart posted images and videos of him digitally penetrating and rubbing the genitals of his young daughter. ECF No. 8 at 14–15. He further bragged about how he had groomed his daughter to be molested. *Id.* |
| 9. | *United States v. Dylan Seader*, 22-cr-69 (E.D. Va.) | The Court sentenced the defendant to 20 years, notwithstanding an advisory Guidelines range of life in prison. ECF No. 23 at 3; *see also* ECF No. 31 at |

14

|   |   |   |
|---|---|---|
|   |   | 1. Seader was initially arrested for attempting to have sex with an undercover agent posing as a 14-year-old girl. ECF No. 31 at 2. He admitted to chatting with *other* younger girls and to having child pornography on his phone. *Id.* After searching the phone, the police found not only two known series of child pornography, but several videos of the defendant performing sexual acts on an 18-month-old child he was apparently related to. *Id.* |
| 10. | *United States v. Jessica Barrington*, No. 19-cr-127 (E.D. Wa.) | The defendant was sentenced to 20 years in prison, followed by a lifetime of supervised release, with an agreement by the Government that such sentence was reasonable, even with a final offense level of 48. *See* ECF No. 135 at 3, 10–11; ECF No. 152. *See also* DOJ Press Release, available at https://www.justice.gov/usao-edwa/pr/united-states-attorney-s-office-obtains-multi-decade-sentences-child-exploitation-cases. Barrington produced pornography of her own sexual abuse of her daughter, and sent images of that conduct to at least ten men she met online. *Id.* Barrington also offered to a man that he could rape her toddler daughter. *Id.* |
| 11. | *United States v. Katrina Adams*, No. 18-cr-31 (E.D. Wa.) | The defendant received 22 years in prison, followed by lifetime supervised release, for various acts, including (1) filming her two-year-old daughter masturbating the defendant's boyfriend as the defendant called out instructions; (2) photographing herself masturbating and digitally penetrating the two-year-old's vagina; (3) graphically (and gleefully) offering, over the course of several *weeks*, to have the boyfriend rape the two-year-old daughter; and (4) discussing sucking the boyfriend's young son's penis. ECF No. 101 at 7–10; *see also* DOJ Press Release, available at https://www.justice.gov/usao-edwa/pr/woman-sentenced-22-years-federal-prison-conspiracy-produce-child-pornography-and. The Government and defense agreed to jointly recommend 25 years in prison, per Rule 11(c)(1)(C), even though the defendant's offense level after acceptance of responsibility was 51. *See* ECF No. 101 at 11–13. |
| 12. | *United States v. Alexander Capasso*, No. 16-cr-318 (D.N.J.) | The defendant received 20 years in prison and lifetime supervised release, per a Rule 11(c)(1)(C) plea recommending 15 to 20 years in prison, for taking images/videos of himself molesting a young child over the course of several months, and for distributing those images/videos. *See* DOJ Press Release, available at |

15

| | | |
|---|---|---|
| | | https://www.justice.gov/usao-nj/pr/camden-county-new-jersey-man-sentenced-20-years-prison-conspiracy-sexually-exploit; *see also* ECF No. 37 at 4, 11. |
| 13. | *United States v. Andrew Smith*, No. 20-cr-108 (D. Id.) | The defendant received 25 years in prison, plus ten years of supervised release, for filming and sexually abusing a girl for three years, from the age of 7 to the age of 10. *See* DOJ Press Release, available at https://www.justice.gov/usao-id/pr/caldwell-man-sentenced-25-years-federal-prison-producing-child-pornography. That sentence was the joint recommendation of the parties even though Smith's final offense level *after* acceptance of responsibility was 44 (life in prison). Smith, who was the boyfriend of the victim's mother, would *slap* the girl if she resisted participating in the pornography; he gave her marijuana to reduce her inhibitions; he handcuffed her to the bed and forced her to give him oral sex; he taught her how to masturbate using dildos; and he forced her to receive anal sex on her *9th birthday*. *See generally* ECF No. 23 at 3–6. |

C. <u>With Proper Treatment, Mr. Redding's Risk of Recidivism Can be Eliminated or Effectively Managed Through Supervision.</u>

As is discussed in greater detail above, Dr. Steinberg outlines in her report how Mr. Redding is amenable to meaningful treatment. If he can get access to the appropriate pharmacological interventions, he will take "chemical castration" medications combined with other therapeutic interventions to treat his disorder. Mr. Redding understands the harm he caused, he is not in denial about his condition or need for lifelong treatment, he accepts responsibility for his conduct, and he is desperate to begin intensive treatment. For these reasons, Mr. Redding respectfully asserts that a downward variance is appropriate in his case.

## IV. CONCLUSION

For all the reasons set forth above, and for reasons that will be articulated in greater detail at his sentencing hearing on February 19, 2026, Mr. Redding respectfully requests the Court grant his request for a downward variance and impose a sentence well below the bottom end of the guidelines so that Mr. Redding has an opportunity to reenter the community with appropriate supervision and structured treatment. Such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

*/s/ Angela Levy*
ANGELA LEVY
Assistant Federal Defender

# **CERTIFICATE OF SERVICE**

I, Angela Levy, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have caused a copy of the Defendant's Sentencing Memorandum to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing System ("ECF") upon Kelly Harrell and Eileen Geiger, Assistant United States Attorneys, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

           */s/ Angela Levy*
           ANGELA LEVY
           Assistant Federal Defender

DATE: February 13, 2026